Welcome. It's nice to be here, Your Honor. May it please the Court, I'm John Paul Richmond, Assistant Federal Public Defender for Carmelita Barela. Your Honors, the District Court's infection instruction in this case was constitutional prejudicial error in two key respects. First, by omitting any mens rea, it permitted the jury to convict Ms. Barela for a generalized threat of infection based on reckless or negligent actions. Secondly, but what was, I mean, the action was saying I've got COVID. That was not negligent. She said it. I'm not sure I understand exactly what it is. Is it your claim that she didn't have COVID and that she was mistaken about having COVID? No, that the law of violent force requires not only a threat, but a threat of a specific type of force. I'll stop you first, because why are we talking about the law of violent force if, in fact, we're talking about a statute that has an alternative and it's the alternative the government has clearly pointed to of, I'll get the quote right, fear of injury. That's right. Your argument is entirely premised or appears entirely premised on the notion that it requires violent force, but the Hobbs Act provides alternatives and one of those alternatives is fear of injury. Well, if the court, the court has already held that Hobbs Act is a crime of violence under the elements clause. Therefore, it has to meet all the requirements of the elements clause going forward, or perhaps the court could create a new overbreadth problem and then remove. This isn't a categorical approach case. We're not struggling in this case with the question of whether this conviction has to qualify as a violent felony. No, but the violent felony jurisprudence is valid binding law in a Hobbs Act analysis. It's the government, in fact, that has introduced it into this case by quoting Amaya and Castleman. These are violent felony discussions in general. They are not Hobbs Act cases, but in order to maintain the Hobbs Act as a violent felony, it has to be treated as such, and this court can't permit jury instructions or convictions for nonviolent conduct for felonies that would not qualify. Otherwise, it would be a major contradiction with the jurisprudence holding that Hobbs Act is a crime of violence. So you started your argument by saying that the instruction given was constitutionally defective. The district court gave the Ninth Circuit-approved model instruction. Is that correct? That is correct. That essentially presents the various alternatives that are permissible for a conviction under a Hobbs Act robbery. That's right, but Hobbs Act robbery, at least the law circumscribing it, has evolved a great deal in part because of all of the crime of violence litigation, and there are very important principles now circumscribing Hobbs, and that's why it's doubly important that the jury be aware of these, that a crime of violence has to be violent force, that it has to be targeted specifically and intentionally. Under your theory, then, can the government no longer rely on a threat of injury for purposes of a Hobbs Act conviction, just setting aside the facts of this case? This is not your typical Hobbs Act robbery case, when you think of it. I think we're all aware of that. But given that the statute lays out alternative ways in which the government can secure a Hobbs Act conviction, you seem to be arguing no, given the way that the jurisprudence has developed. You can't rely on a threat of injury anymore. Am I understanding your position correctly? Which means, essentially, the model instruction is now no good. The model instruction, in certain cases, absolutely has to be revisited, such as this case. There are plenty of cases where it wouldn't make any difference, where the threat of injury would be clearly accompanied by a threat of violent force. But this is one of those borderline, far-flung cases where it's particularly important to update the Hobbs Act instructions so the that a generalized threat is enough, that negligent or reckless force being threatened is enough, or that simply fear is enough. It's true that fear can't be caused without a risk of a threat of force, but the jury has to know that. The jury has to know that the force is still a requirement for conviction. And the instruction here was particularly important because the facts here are quite susceptible by the jury of a negligent or reckless interpretation. The facts are acting visibly sick while shoplifting. That's it. There's no targeting. There's no advancing towards another person. There's no statement, I will cough on you. There's no syringe. There's no envelope full of powder. There's no gun. There's no sexual intercourse. Well, aren't those arguments really go towards a sufficiency of the evidence argument? Which, now it's an uphill for you because every inference has to be drawn in favor of the government. Well, they do, but they're also really important in terms of the prejudice analysis. It's very important for the court to understand that this case is a one witness case with no corroboration, with very little describing the circumstances of the threat that is very, very capable of being interpreted as a non-Hobbs Act robbery. We do maintain our sufficiency argument as well and we certainly would argue that the facts here don't show a threat to use intentional force. They show something quite different. They show larceny with perhaps a threat to use intentional force. The threat was, quote, if you come after me, you might get COVID. That is not a Hobbs Act robbery. That is... And it's not a Hobbs Act robbery. What case tells us that Hobbs Act requires, Hobbs Act, not ACCA, but Hobbs Act requires violence? Well, once Hobbs is defined as... You have a case that holds that specifically, that the threat of injury by communication of disease, not being violent, is not a Hobbs Act violation. Do you have that case? No, no, because the government doesn't bring these cases. Well, regardless, you don't have it, no. So tell us what is the black letter law case that tells us that Hobbs Act requires physical force violence? I believe that that would be Dominguez. Well, Dominguez holds that Hobbs Act robbery is a crime of violence and the... Under the facts of Dominguez, what was the violence involved? Dominguez... Judge Wen probably remembers better than I. I can't remember. Dominguez... Oh, it was some sort of Brinks truck robbery or something like that. An inside job. There was also an attempted robbery charged and there was a major issue there as well. Your typical Hobbs Act robbery case, but I was on the panel, as you know, and I don't think the holding goes as far as covering the issue that you want it to cover, which is that under a Hobbs Act robbery, a threat of injury is not sufficient. You're treading new territory here. You're saying despite what the statute says, the government can no longer prosecute a Hobbs Act robbery purely on a theory of threatened injury, immediate or future. That's part of the statutory text. That was not a question that we wrestled with in the Dominguez case. Right. But I think it's a fairly straightforward answer that the court can give. The court can say, once we define Hobbs Act as a crime of violence, we can't go back on that. We can't uphold jury instructions that are non-crimes of violence. But didn't Dominguez simply say, based on the application of Duenas Alvarez, that the government normally would not prosecute a Hobbs Act case without a show of violence. That's all the Dominguez held. Right. But that is... If this court holds that violence, that violent force is not a requirement of Hobbs Act conviction, it's very difficult for this court to maintain its position that Hobbs Act is a crime of violence under 924c3. It would seem impossible to do so. In the usual Hobbs Act case, it is a crime of violence. But the Hobbs Act plain language does not require a crime of violence. It requires putting a person in fear of injury. Right. But that is circumscribed by the crime of violence law. The jury isn't asked which of the provisions of the Hobbs Act they're finding. I mean, you could argue there could be alternatives, and we have this argument under the modified categorical approach a lot. But in this case, the jury is simply told threatening to infect another person with the disease can amount to threatened force, violence, or fear of injury immediate or future to that person. And the jury is not asked, is it threatened force? Is it violence? Is it fear of correctly cover the applicable law? That is to tell the jury that they can convict on something less than Hobbs. I think, I'm hearing your point. I would separate it out because the instruction does say can amount to and doesn't tell the jury that it is. That becomes an evidentiary question. But as I understand your point, basically, is that this threatens to undermine the treatment of a Hobbs Act conviction because you could have a Hobbs Act conviction in this context, you're arguing, without the violence. And that clashes with the position taken by the government elsewhere and by the cases that we've been called upon to consider. That's right. And there are many cases considering crime of violence, which I think both parties would agree are applicable in this discussing similar terms and similar phrases. And so these are now guideposts that have to be monitored, especially in a case as close as this. Counsel, let's set aside the fear of injury issue and go to the other portion of the Hobbs Act, which is the threatened force. Under Johnson, it's defined as the force that's capable of causing physical injury or pain. Why isn't the threat of COVID, which I don't need to tell you, can have pretty severe effects on certain people? Why is that not a force that's capable of causing injury? Well, first, there was no evidence put in by the government as to pain or injury. So, this court, COVID is just a word in this case. But secondly... Do you dispute the proposition? I mean, particularly in April 2020, but today as well. Why isn't subject judicial notice that COVID can result in serious physical injury? Well, the judge didn't take judicial notice of that, and that wasn't litigated. Well, because Judge Breyer said that if you were going to contest that, he would allow the government to reopen. So that issue's off the table. I'm just talking about just the legal issue of force capable of inflicting injury, assuming that that point of injury is essentially conceded because you took it off the table at trial. Well, it's not conceded. We did not waive in any sense. Or at least it wasn't contested. You just purely talking about the Johnson definition. Why isn't this enough? Because Johnson's not the only definition. A virus can probably, if the evidence shows it, be a physical force. But it has to be targeted at another. It has to be intentionally directed at that person. It has to be enough to overcome the resistance of the victim. There are all these other... Well, it seems to me the statement, I've got COVID in this context, can check off all those boxes if the jury's decided it's checked off those boxes. I mean, it's said in a way that the jury could conclude, and apparently did conclude, was meant to facilitate her leaving the Walgreens with the goods. Yes, but the evidence was also, it permitted a very strong inference that this was not a threat to intentionally inflict any... Permitted an inference, but it's not the inference the jury drew. Right. And to be honest, it's not the inference I've drawn from looking at the testimony that was offered. Right. But it was a jury question, and they had no guidance whatsoever on what it meant to use force against the person of another to target someone, to intentionally, intentionally infect somebody with an illness. They don't need intentionally infect. I mean, she apparently didn't know and apparently didn't have COVID. The statement is used to threaten the exercise of force. And that's enough for these purposes, isn't it? But it has to be a specific kind of force that is threatened. It has to be force against the person of another. Well, but let's get the facts here. I realize you're taking it over, but this is a hard question. The facts here is that she says, I have COVID. Just a minute. I'm sorry for interrupting you. I keep seeing the screen blinking and I don't know if that's affecting the streaming or if it's just a loose wire somewhere. Okay. I'm sorry. Go ahead. She says that in a way that appears to be directed to the store manager. And after that, I guess the security guard, stay away from me. I've got COVID. Don't stop me on my way out. Now that's not the only inference that could be drawn, but that's the conclusion the jury drew. What else did they need to be told to be able to draw that conclusion or a different conclusion? They need to be told that the threat was to intentionally try to infect anybody who tries. Doesn't have to infect. She's trying to get away. Well, she's trying to get away. And so the threat is she might not have had COVID at all. In fact, there's some reason to think that she didn't. But by saying that, that seems to suggest to me that she's using that as a device to get them to stay out of her way. Right. But it's very important to define the level of force that must be threatened. And it's not, I'm going to run into the street where the cars are, you might get hit. Over here, there's virus. If you come over here, you might get COVID. That was what the opening and that is not enough. Right. We've taken you over time, but I'll give you a couple of minutes for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the court. My name is Mary Jean Chan and I represent the United States in this appeal. At a time when San Francisco was shut down over the novel coronavirus, Ms. Varela exploited people's fears of being infected with the disease in order to take property that she wanted from Walgreens, which was an essential business. Her prosecution furthered an important interest in deterring this kind of behavior. And her conviction was... May I interrupt you for just a second? Of course. I take that Mr. Reckmuth's position is that Ninth Circuit precedent has determined that a Hobbs Act case of conviction is a crime of violence for purposes of the ACCA for increased penalties. The position that I think he takes is that that determination is binding on us as to what the liability are and that we must reverse because there's no threat of physical violence in this case. How do you meet that argument? Well, first, I mean, to the extent that it is attacking the jury instructions, I think it's wrong. It's backwards. This court has found Hobbs Act robbery to be a crime of violence or a violent felony under the categorical approach. This is not a categorical approach case. And so to say that the jury instructions are incorrect because they don't incorporate every single case that's talked about, 924E or 8 U.S.C. 16, is just incorrect. But if we take that step, that threatens to undermine the case law that permits the as a violent crime. Is that a step that your office is proposing that we take? No, we're not arguing that Hobbs Act robbery here is somehow divisible or that it is not a crime of violence. What we're arguing is that in this context, the instructions clearly conveyed to the jury that fear of injury here stems from something that would qualify as physical force under Johnson. And that is both as to the mens rea as well as to the quality of the physical force. If you look at the instructions. Well, I'm looking at the instruction and I just read the sentence threatening to affect another person with a disease can amount to threatened force, violence or fear of injury. So it tracks the statute. But fear of injury is set up independently, not necessarily. And I guess you could parse the sentence in different ways, but it seems to me to suggest that fear of injury is something distinct from violence. Well, several points, Your Honor. I mean, as to just that instruction, it does follow force or violence. And under the canon of Noskator Soki, which is I'm probably bungling and not pronouncing it correctly, it follows that if it's in that category, we're talking about fear of injury that is of the same vein and category as force and violence. But I also point this Court to the instruction that precedes just the threatened disease instruction. If you look at what it defines as robbery, robbery means the unlawful taking or obtaining of personal property from the person or in the presence of a person. So that connotes something that is more than just something esoteric or removed. It not only has to be taken from the person or in their presence, it has to be taken against their will by means. And if there is a threat, I think as this Court sort of pointed out, there has to be some intentionality behind that that is not just reckless or negligent. And it has to be something that's immediate or future to their person. Again, so I think all of those aspects. JUSTICE BREYER. The violence piece might still be missing. If you look at that part of the instruction, it has the same by means of actual or threatened force or violence or fear of injury, suggesting that fear of injury can be a basis separate and apart from violence. And that's what threatens to undermine our case law that treats a Hobbs Act conviction as a crime of  MS. COTT. Well, it is distinct, Your Honor, it's fear of injury. But fear of injury in this context definitely, I think, requires a finding of physical force as defined by the Supreme Court in Johnson. Physical force doesn't have to be violent force. JUSTICE BREYER. Or jury that. MS. COTT. They weren't specifically instructed that. But again, if you go to the instructions, it says that it has to be against the person's will. The taking has to be against the victim's will. It has to be something that's done in their presence or of their person. Those things really support what the Supreme Court has said in Stokelyn, for example, that when we talk about violent force or physical force in the context of ACCA or these crimes of violence cases, we're not talking about necessarily violent, violent force. We're talking about force that's enough to overcome a person's will. And that is something that the Supreme Court has been extremely clear on. And it is within the confines of this and direction of this instruction that says it has to be against the person's will, that the robbery has to be effected against the victim's will in their presence, as of their person. And because of all of that, this, the jury instructions here accurately stated the law. It's an accurate statement of the law. And if the Court has maybe some concerns or thoughts about how maybe it could have been formulated differently, that may be true, but that is subject to an abuse of discretion standard. Is it your position that the threat of communicating COVID can amount to a threatened force? It is a threatened injury that comes from physical force as Castleman defined it. Physical force being something that can be direct or indirect and distinguish from emotional or physical injury. The Supreme Court has explained in Castleman that force that qualifies as physical force can be direct as in if I, you know, punch you or hurt you, but it can also be indirect as where I withhold vital medicine or administer poison. The poison may be the thing that's actually causing the physical injury, but it is physical in the sense that it conveys, it impacts you physically. Similarly, you think that it communicating a disease can be violence? In that sense? Yes. The way in the terms of the Supreme Court, and again, it may not square up with the way we think of the word violent, and it's not sort of shoot them up. Like in Dominguez, where we had assault rifles, that type of thing. The fact pattern here is different, but as we all know, COVID can cause really grievous physical symptoms and illness, and it can cause a death. Those are things that are in a way not distinguishable from what can happen if you are at the other end of a gun or a knife or some other weapon. At that point, counsel, your opposing counsel said that there was really no evidence presented by the government that would permit the jury to consider the level of injury required. Now, I know that the court, the district court felt that that was not something contested, and that if it was, he would allow the government to reopen, but isn't that part of the government's burden of proof? Well, it's the government's burden of proof in the sense that it is when there's a gun that's at issue in a Hobbs Act robbery case too, and where there is no real issue about what can happen with a gun. There doesn't have to be testimony in a case that a gun can shoot and injure somebody or kill somebody. That's because it's something that's background knowledge. It's common knowledge. And here, given the context of COVID, which, I mean, at the time of the trial in July 2021, the court had to give instructions to the jury during voir dire to say, listen, if you're not vaccinated, one of my guidelines is you have to wear face covering. This is not something, and that there was going to be special social distancing in order to even have the trial. To have that be something that isn't kind of considered background knowledge or have to be proven would, in this case, really cause, I think, it was not something that the defendant wanted because it would cause prejudice to the defendant. So I don't think that that means that there's insufficient evidence, but there is also sufficient evidence here because Ms. Dimipasek testified to being fearful of this because there was a shutdown of the city that only allowed essential businesses to stay open during this time because of COVID, that it was transacted or it was transmitted, she understood, through coughing, that there was a panic in the store, really, when this happened, such that they were sort of keeping a distance from her. And this is something that is corroborated by the video evidence as well as the photographic evidence in terms of the threat of injury and fear of injury. The 911 call also is corroborative in terms of the concern that the people at the store had when this happened, that they called. And the focus of the store, the call was, if you've listened to the call or read the transcript, it's not that somebody's stolen merchandise, it's that there's somebody coughing and saying that they have COVID. That was really the crux of the emergency. And so I think that even without more evidence, there was sufficient evidence for a jury, and particularly given the background that everybody sort of experienced, to take away from that, that there was a fear of injury conveyed. And again, the jury could have found otherwise. The defendant argued that there was no threat made at all. The jury was capable and empowered to make a contrary finding, but as to sufficiency of the evidence, all reasonable inferences are to support what the jury's verdict was. And here, I think a threat of injury based upon this threat that if you come near me, I will infect you with COVID, and so I'm going to get away with what I want to get away with. As to the other jury instructional issues, again, the mens rea point that defense counsel raised, I think, again, if you look at the instructions and the standard is whether as a whole, they The instruction specifically requires that the jury find that the defendant knowingly obtained money or property, that the defendant did so by means of robbery, means that she employed herself, and that she believed that Walgreen's Pharmacy parted with the money or property because of the robbery, because of the means that she employed in this case. So going just quickly back again to the Hobbs Act robbery being a crime of violence, again, this is not a crime of violence case, but I just want to be clear that the government is not suggesting that somehow this, the fear of injury is something that should distinguish from the other prongs that in Dominguez led this court to find that it is categorically a crime of violence, as have every single other court in the country thus far unanimously. One of the cases that The cases on these facts aren't often brought, perhaps are never brought. I understand the circumstances that led this, although I also understand Judge Pryor's frustration expressed at the end, but that's water over the dam or under the bridge or someplace. But there is a concern that I have about the tension between our treatment of a Hobbs Act conviction as something that categorically qualifies as a crime of violence, and the current posture of this case where violence is not something that the jury had defined, unless we treat the threat of disease as, in effect, an application or a threat of violence. Is it the government's position that last proposition is one that we should recognize? Yes, Your Honor, and I think that this court is bound by its case in a decision in Amaya to do so, in which case this court found that threatening to infect somebody with HIV constitutes the kind of physical force that would make something a violent force or a use of physical force that satisfies the definition of a crime of violence or a violent felony. Again, I think the word violent sometimes is a little misleading because I think just intellectually, I mean, the conception we have there is we're talking about assault rifles, we're talking about something more physically violent. But the Supreme Court has been clear that the term here is really physical force, the use of physical force. That's the terminology that's used in the statutory language with respect to violent felonies and crime of violences. And that force, that level of force, has to be more than just touching. It's not just sort of offensive touching. It has to be enough to overbear the victim's will. And so it's violent only to that extent, and only to that extent is required. And that is what this court found in Amaya. When you are subjecting somebody to a disease that maybe is controllable but is chronic and can lead to death, especially if not managed correctly, that that constitutes the kind of physical force that Congress was talking about in these crime of violence cases. If I could change the subject briefly, and we made your colleague work a little over time, so I'll ask you to do the same. Yes. The 911 call. Yes. And in particular, the portion, I understand that the portion where the store manager who testified was on the call isn't what we're concerned about or what, not what being challenged. It's the portion when the other time in that call, he says that she's left the store. And I wonder, I guess, I was thinking of confrontation clause, but I guess potentially for hearsay as well, if at that point in time, he's not describing an emergency situation to be responded to because she's not there posing that threat anymore, does that fall outside the exception that would permit it to come in as an exception to the confrontation clause? No, Your Honor, it doesn't. It's an ongoing emergency is one of the factors to whether something is non-testimonial. But the real test is whether what is being asked and what is being answered is in order to create some sort to help prosecute the defendant. And here, it clearly wasn't. It was to address an ongoing kind of urgent situation. And really, what you have here is if, for example, you had somebody who had, I don't know, shot up, you know, one location or one classroom, let's say, and the person left that classroom and went somewhere else still with a gun. If somebody from the original classroom calls the police 911 and says that somebody just shot something up here, if they've left, they're going around. I don't think that the court would have trouble finding that to be non-testimonial and there to be an ongoing emergency. Here, similarly, you have somebody who came in who people felt like was threatening them and their safety with COVID who left and could potentially be going off to do similar things elsewhere. And so I think it clearly satisfies the test for whether it was something that was clearly aired in finding that the purpose of the statements made in the 1 minute and 30 seconds, which were pretty inarticulate, that those were not for the purpose of testimony but were really to just report a pretty scary and chaotic situation. What was the purpose of introducing the 911 recording? Well, the 911 recording helps to corroborate kind of the fear of injury because it shows that the people who were at the Walgreens were frightened by the situation. It wasn't as though somebody was just sort of coughing and they could have taken it sort of in a carefree way. They might not have cared at all. But that was not the scene there. The scene was one of great fear. And the confession that was excluded on the morning of Wardere indicates that even the defendant really knew this. She knew that when she did that, people were shaking for their lives. That's true, but can we consider that because it was excluded? You can consider it for the 911 call about whether it was testimonial or non-testimonial. It's not something certainly that this court considered for sufficiency because it was not before the jury. But as to whether the district court erred in making the decision to admit the 911 call, I think it's permissible. All right. Thank you, Counsel. We've taken you well over time. We ask for information. Let's put two minutes on the clock. Thank you very much, Your Honor. Just briefly, I want to make sure that the court is aware that the appellant did object to the infection instruction on the grounds that it expanded the Hobbs Act. So this is not an abuse of discretion. It is arguing that it misstates the law of the Hobbs Act. It is constitutional error. This was a fear of injury case, and the jury was never required to find any violent force or a threat of a force against the person of another. Again, it all goes back to the government's The government argues that willfulness against a person's will should have communicated to the jury what the standards are here, and that's just not correct. There has to be violent physical force. It has to overcome the person's will, but it also has to be intentional. The threat has to be of a person. Here, they were easily able to find a generalized implicit threat. Just like any person who's sick, every sick person in public is threatening to infect the people around them, and a generalized implicit threat to act recklessly, to continue breathing, to continue talking, to continue walking around in a store without a mask. They were not permitted to make that conviction. They should not have been permitted to make those findings and convict on that basis. As to force or violence, just to be clear, there was neither evidence nor an instruction as to violent force in this case, that it had to be capable of causing injury. And yes, this was prejudicial and admissible hearsay, clearly. It was the government's burden to show by preponderance that there was personal knowledge. It was never even attempted, and it was very prejudicial. It was devastating. I was there. It was the only corroboration for a one-witness case, and the jury wanted to hear it again, and they wanted to know what he saw, and nobody has ever been able to show what he saw. All right. Thank you very much, counsel, both sides for your argument today. Thank you, Your Honor. The matter is submitted.
judges: CLIFTON, BEA, NGUYEN